# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

JOE HARRIS                                                                    PETITIONER

v.                                    NO. 5:10CV00005 JLH/HDY

RAY HOBBS, Interim Director of the                                          RESPONDENT
Arkansas Department of Correction

### FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following findings and recommendation have been sent to United States District Judge J. Leon Holmes.  Any party may serve and file written objections to these findings and recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the Office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendation.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.    Why the record made before the Magistrate Judge is inadequate.

2.    Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.    The details of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, Arkansas 72201-3325

<u>DISPOSITION</u>

<u>STATE COURT PROCEEDINGS</u>.   In April of 1989, petitioner Joe Harris ("Harris")

pleaded guilty in Pulaski County, Arkansas, Circuit Court to a number of criminal offenses

and was sentenced to an aggregate term of life in prison in the custody of respondent

Ray Hobbs ("Hobbs"), the Interim Director of the Arkansas Department of Correction.[1]

Because Harris pleaded guilty, he was precluded from prosecuting a direct appeal.

In April of 1992, Harris filed a trial court motion to modify or, in the alternative,

to vacate his sentence pursuant to Arkansas Rule of Criminal Procedure 37.   He

maintained in the motion that his guilty plea was not knowingly, voluntarily, and

intelligently entered for the following reasons: (1) his trial attorney failed to provide

competent representation when counsel over-stated the length of imprisonment Harris

might receive if he proceeded to trial; and (2) the trial court judge failed to apprise

Harris of certain matters required by the Arkansas Rules of Criminal Procedure, including

the mandatory minimum and maximum sentence for each criminal offense.   The trial

court judge denied the motion in May of 1992, specifically finding the following:

---

[1]

Hobbs represents that Harris pleaded guilty to the following ten criminal offenses: (A) two counts of second degree battery, (B) two counts of aggravated robbery, (C) two counts of aggravated assault, and (D) four counts of "attempts to commit additional crimes."   <u>See</u> Document 7 at 1.   In an order denying Harris' subsequent motion to modify or vacate his sentence, the trial court judge found that Harris pleaded guilty to "eleven … counts of statutory violations."   <u>See</u> Document 7, Exhibit D at 1.   Although it is possible that the eleventh offense and/or count involves his apparent status as an habitual offender, the undersigned need not resolve that apparent conflict as the matter is not germane to the issues at bar.   In addition, it is not necessary to resolve the apparent conflict that exists over the length of his sentence as that matter is also not germane to the issues at bar.

The court, having listened to the tape of the plea, finds that the judge and [Harris] engaged in a colloquy. [Harris] stated that he was pleading guilty because he was guilty, that he understood what the state would have to prove, and that they could prove the elements of each offense if they went to trial. [Harris] stated that no threats or promises had been made to him and he understood that the court did not have to go along with the negotiations. [Harris] said he understood that he faced a penalty range up to approximately two [life sentences] plus fifty years and that he was an habitual offender, with more than one, but less than four, prior felony convictions. [Harris] told the court he understood that by pleading guilty he was giving up his right to a trial by jury, to subpoena witnesses in his behalf, to confront and cross-examine the witnesses against him, as well as his right to appeal his conviction. He said he understood, signed, and had no questions about his plea statement. At this point, the court listened to a recitation of the facts for each count and [Harris] admitted his participation in each count. In a final series of questions by the court, [Harris] said he was satisfied with his attorney and he knew of nothing he could do to change the outcome of the case. [Harris] knew of no witnesses he could call to court who could say he did not commit these crimes. Lastly, the court asked [Harris] if he know of ANY reason, an "extremely important question," legal or otherwise, why the court should not accept any one of the pleas of guilty. [Harris] replied that he did not.

All the above indicate that [Harris'] plea was entered knowingly, voluntarily, and intelligently, and is not in violation of the constitution or the laws of the State of Arkansas.

See Document 7, Exhibit D at 1-2 [emphasis in original].

Harris appealed the denial of his motion to modify or vacate his sentence to the Arkansas Supreme Court. During the course of the appeal, the State of Arkansas apparently filed a motion to dismiss the appeal. The state Supreme Court granted the motion and dismissed Harris' appeal. The appellate court mandate was issued in February of 1993.

In April of 1995, Harris filed a trial court petition for a writ of habeas corpus pursuant to Arkansas law.  He maintained in the petition that his guilty plea was not knowingly, voluntarily, and intelligently entered for the following reasons: (A) the trial court judge failed to establish a factual basis for the guilty plea, and (B) the trial court judge failed to apprise Harris of his constitutional rights.  The trial court judge denied the petition in May of 1995, specifically finding that Harris knowingly, intelligently, and voluntarily plead guilty.

Harris appealed the denial of his petition for a writ of habeas corpus to the state Supreme Court.  During the course of the appeal, two things of note occurred.  First, in June of 1995, he filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. 2254 in the United States District Court for the Eastern District of Arkansas.  See Harris v. Norris, PB-C-95-345.  Second, the State of Arkansas apparently filed a motion to dismiss the appeal.  The state Supreme Court granted the motion and dismissed Harris' appeal.  The appellate court mandate was issued in January of 1996.

PB-C-95-345.   As the undersigned noted, during the pendency of the aforementioned appeal, Harris filed a petition for writ of habeas corpus pursuant to 28 U.S.C. 2254.  He maintained in the petition that his plea of guilty was not voluntarily entered for the following reasons: (1) he was never advised of the nature of the charges against him, (2) he did not understand the charges against him, and (3) he never made a "factual statement that he did the charges."  See Document 7, Exhibit K at 4.

The State of Arkansas responded to Harris' petition by filing a motion to dismiss. The State of Arkansas apparently took the position that the claims contained in his petition were procedurally barred from federal court review.

Harris was invited to submit a response to the motion to dismiss.  He accepted the invitation by filing a motion to voluntarily dismiss his petition.   In the motion, he apparently asked that his petition be dismissed so that he could pursue relief in the state courts of Arkansas.

In August of 1995, United States District Judge Elsijane T. Roy granted Harris' motion to voluntarily dismiss his petition.  In so doing, she noted the following: "While it is unclear to the Court that any state court forum is available to [Harris] at this stage, we will not foreclose his efforts to submit claims in state court."  See Document 7, Exhibit M at 2.

SUBSEQUENT STATE COURT PROCEEDINGS.   Although Harris apparently represented that he intended to pursue relief in the state courts of Arkansas after the dismissal of PB-C-95-345, there is nothing in the record to establish or otherwise suggest that he did so.   In that regard, the undersigned accepts as true the following representation made by Hobbs in his response to the petition at bar: "If Harris did pursue further relief in any state court, as he informed this Court that he planned to do when it granted his motion to dismiss, he did not in Pulaski County Circuit Court ..."  See Document 7 at 2.

THE PROCEEDING AT BAR.  In January of 2010, Harris commenced the proceeding at bar by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. 2254.  In the petition, he raised the following claims: (A) his trial attorney failed to provide competent representation when counsel did not advise Harris of the terms of a plea bargain, specifically, that counsel failed to advise Harris of the criminal offenses he was pleading guilty to; (B) the State of Arkansas has failed to comply with the terms of Act 378 of 1975, codified at Ark. Code Ann. 16-93-507, as he should have been eligible for parole and/or a pardon at some point during the past twenty-one years; and (C) his trial attorney failed to provide competent representation when counsel allowed Harris to be convicted twice of aggravated robbery and convicted twice of second degree battery, all in violation of his protection against Double Jeopardy.  He appeared to acknowledge that the claims had not been exhausted at the state level but maintained that he only possessed a third grade education.  Harris also offered an explanation as to why his petition was filed more than one year after his conviction became final, a point he apparently conceded.  His explanation was as follows:

> that the law … required me to serve amount of time on the life sentence due to Act 378, Ark. Code Ann. 16-93-507(b)-(4) and 16-93-507(b)(5) that the purpose of this section is to give circuit courts power that they did not previously possess.  [sic]  …
>
> And at this time, I have served 21 years of the life sentence.

See Document 2 at 13.

-7-

Harris accompanied his petition with the pending motion for commutation relief pursuant to Act 378 of 1975.  <u>See</u> Document 3.  In the motion, he raised the same claims he raised in his petition and asked that his sentence be nullified or otherwise modified.

Hobbs thereafter responded to Harris' petition.  Hobbs maintained in his response that Harris' petition should be dismissed because it was filed more than one year after his conviction became final and there is no justification for tolling the limitations period.  Hobbs alternatively maintained that the petition should be dismissed because the claims raised in it are either non-cognizable in federal court or are procedurally barred from federal court review.

The undersigned briefly reviewed the record and determined that Harris should be invited to file a reply.  Harris was so invited and subsequently filed two separate pleadings.  A concise summary of those pleadings is not easy.  It appears that he generally advances the following four arguments: first, his trial attorney was incompetent; second, "the case against [him] was built on evidence that was, by any reasonable standard, compromised, corrupt[], and unsafe [as] the eyewitnesses, police officers, and the prosecutor twisted, tweaked, and simply changed [their] stories . . . ," <u>see</u> Document 10 at 2; third, Harris' petition is not barred by limitations; and fourth, his claims are not procedurally barred from federal court review.  Liberally construing his <u>pro se</u> pleadings, he also appears to maintain that the final disposition of his petition should be stayed while he pursues additional relief in the state courts of Arkansas.

-8-

The undersigned has now had an opportunity to thoroughly review the pleadings and exhibits submitted by the parties.  On the basis of that review, the undersigned issues the following findings and recommendation.

LIMITATIONS.  The Antiterrorism and Effective Death Penalty Act ("Act") was enacted in April of 1996.  It provides that a state prisoner has one year within which to challenge a state court conviction by means of a petition pursuant to 28 U.S.C. 2254.[2] If he does not file such a petition within that one year period, the petition is forever barred.

What of the state prisoner whose conviction became final before April of 1996? He is accorded a one year grace period from the enactment of the Act, or up through April of 1997, to challenge a state court conviction by means of a petition pursuant to 28 U.S.C. 2254.  See  Baker v. Norris, 321 F.3d 769 (8th Cir. 2003).

---

[2]

28 U.S.C. 2244(d) identifies the events that trigger the commencement of the one year period. It commences from the latest of--

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Harris pleaded guilty and was sentenced in April of 1989.  The undersigned assumes, arguendo, that his conviction became final in that month and year as he was precluded from seeking direct review of his conviction.  Because the Act had not yet been enacted, though, he was under no statutory deadline for filing a petition pursuant to 28 U.S.C. 2254.

In April of 1992, or four years before the enactment of the Act, Harris filed a trial court motion to modify or vacate his sentence.  That proceeding concluded in February of 1993 when the state Supreme Court issued a mandate following the dismissal of the appeal of his motion.  In April of 1995, or one year before the enactment of the Act, he filed a trial court petition for a writ of habeas corpus.  That proceeding concluded in January of 1996 when the state Supreme Court issued a mandate following the dismissal of the appeal of his petition.  Harris then appears to have ceased all efforts to challenge his conviction in state court.  Three months later, the Act was enacted, and he had up through April of 1997 to file a petition pursuant to 28 U.S.C. 2254.[3]

Did Harris file the petition at bar before April of 1997?  Clearly, he did not.  He did not file the petition at bar until January of 2010, or almost thirteen years after the expiration of the one year grace period.  His petition should therefore be dismissed unless he can show some justification for tolling the limitations period.

---

[3]

The filing of the petition in PB-C-95-345 is of no consequence in determining the timeliness of the petition at bar.

In <u>Finch v. Miller</u>, 491 F.3d 424, 427-428 (8th Cir. 2007), the Court of Appeals outlined the circumstances that justify the tolling of the one year period.  The circumstances are as follows:

> "To be entitled to equitable tolling, [the petitioner] must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." ...  "Equitable tolling is proper only when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." ...  "Equitable tolling is an exceedingly narrow window of relief."  ...

The under signed has thoroughly examined Harris' submissions and, in doing so, has given them a liberal construction.  The undersigned can find nothing in his submissions to justify tolling the limitations period.  There was nothing about the circumstances surrounding his trial court motion to modify or vacate his sentence, his trial court petition for a writ of habeas corpus, PB-C-95-345, or any other proceeding that justify tolling the one year period.  His trial attorney's incompetence, even if true, does not justify tolling the limitations period, nor do his alleged third grade education and the possibility that evidence used to compel his plea of guilty was corrupted.  Harris devotes considerable attention to the novel assertion that he was required to serve a portion of his sentence before he could file a petition pursuant to 28 U.S.C. 2254.  The undersigned knows of no such requirement, and his citation to Act 378 of 1975 is not persuasive.  In short, he cannot show that he has been pursuing his rights diligently and that some extraordinary circumstance stood in his way and prevented a timely filing.

On the basis of the foregoing, the undersigned finds that Harris filed the petition at bar almost thirteen years after the expiration of the one year grace period that concluded in April of 1997. The undersigned additionally finds that there is no justification for tolling the limitations period. Accordingly, his petition should be dismissed as being barred by limitations, his motion for commutation relief and all other requested relief should be denied, and judgment entered for Hobbs.[4]

In addition to the foregoing findings, it is necessary for the undersigned to make note of two additional matters. First, Harris appears to maintain that the final disposition of his petition should be stayed while he pursues additional relief in the state courts of Arkansas. The undersigned will not so recommend because he has failed to identify what additional relief is possible in the state courts of Arkansas twenty-one years after he pleaded guilty; the undersigned certainly knows of none. Second, Harris appears to maintain that he is actually innocent of the offenses underlying his conviction. The undersigned will not consider his assertion, though, because it is not cognizable in this proceeding, see Herrera v. Collins, 506 U.S. 390, 401 (1993), and Meadows v. Delo, 99 F.3d 280, 283 (8th Cir. 1996), and, assuming it were, he has not supported the assertion with any evidence whatsoever.

---

[4] As the undersigned noted above, Hobbs maintained that Harris' petition should also be dismissed because the claims raised in it are either non-cognizable in federal court or are procedurally barred from federal court review. Although Hobbs is clearly correct-that Harris' petition should also be dismissed for those reasons-it is not necessary to address the assertions because it is quite clear that his petition is barred by limitations.

RECOMMENDATION.   The undersigned recommends that Harris' petition be dismissed as being barred by limitations and that his motion for commutation relief and all other requested relief be denied.   The undersigned recommends that judgment be entered for Hobbs.

DATED this ____10____ day of March, 2010.

_____
UNITED STATES MAGISTRATE JUDGE